UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 2:11-cr-32-JMS-CMM |
| | ) | |
| SANDRA MONTES-FLORES, | ) | -01 |
| *Defendant.* | ) | |

### ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE STATEMENT

Presently pending before the Court is Defendant Sandra Montes-Flores' Motion to Exclude a statement she made at the safety-valve proffer in a related case. [Dkt. 51.] Ms. Montes-Flores has filed this motion pursuant to Federal Rule of Criminal Procedure 12(b)(3), arguing that a statement she made to the Government after signing a plea agreement in another case must be suppressed because admitting it at trial would allegedly violate the evidentiary prohibition on statements made during plea discussions. For the following reasons, the Court denies Ms. Montes-Flores' motion.

### I.
#### BACKGROUND

Ms. Montes-Flores moves to exclude the statement she made at a safety-valve proffer in Cause Number 2:10-cr-21-JMS-CMM (the "Drug Case") from any proceedings in this case, which is Cause No. 2:11-cr-32-JMS-CMM (the "False Statement Case"). In order to resolve the motion pending in this case, it is necessary to detail the background of both criminal cases as well as Ms. Montes-Flores' post-conviction proceedings in Cause No. 2:12-cv-225-JMS-WGH (the "Habeas Case"). The factual background set forth below is based on the Government's allegations, which must be proved beyond a reasonable doubt should either case proceed to trial, and

the attestations of Assistant United States Attorney Matthias Onderak in an affidavit filed in the Habeas Case.[1]

### A. September 2010 Vehicle Search

The Government alleges that on September 5, 2010, law enforcement officers conducted a traffic stop of a truck and accompanying camper driven by Raul Lopez-Montano in Putnam County, Indiana. [Drug Case dkt. 149 at 1.] Ms. Montes-Flores and Pastor Limon were passengers in the truck. [*Id.*] A drug detection dog alerted law enforcement officers to the presence of narcotics in the vehicle and, upon searching; they found $105 in the center console of the vehicle, $1,892 in Mr. Lopez-Montano's wallet, and $1,305 in Ms. Montes-Flores' purse. Law enforcement officials sought and obtained a warrant to search gas tanks attached to the vehicle and subsequently discovered approximately 21 kilograms of cocaine. [*Id.* at 2.]

### B. Statement to Law Enforcement

Ms. Montes-Flores agreed to speak with the authorities after being advised of her *Miranda* rights. [*Id.*] Ms. Montes-Flores admitted involvement with transporting drugs from California to New York, but she stated that she did not know the details about who was instructing her, the type of drugs, or how much was being transported. [*Id.*] Ms. Montes-Flores specifically denied that Mr. Limon was involved. [*Id.* at 2-3.] Partially as a result of her statement, Mr. Limon was not arrested and never charged for his involvement. [*Id.* at 3.] Instead, Mr. Lopez-Montano and Ms. Montes-Flores were arrested and ultimately indicted by a grand jury for possessing with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine. [*Id.*; Drug Case dkt. 25.]

---

[1] Because it is necessary to cite to all three dockets, the Court will refer to them respectively as "Drug Case dkt. ___"; "False Statement Case dkt. ___"; and "Habeas dkt. ___." For example, the AUSA affidavit filed in the Habeas Case will be referred to as "Habeas dkt. 13-1."

### C. Guilty Plea and Safety-Valve Proffer in Drug Case

On June 9, 2011, Ms. Montes-Flores signed a plea agreement with the United States. [Drug Case dkts. 71; 72.] A pre-sentence report was ordered and prepared, and a combined plea and sentencing hearing was ultimately set for September 28, 2011. [Drug Case dkt. 86.] The presentence report concluded that Ms. Montes-Flores fell in United States Sentencing Guideline criminal history category I and, accordingly, qualified for the safety-valve provision of 18 U.S.C. § 3553(f)(5) if she "truthfully provided to the Government all information and evidence [she] has concerning the offense or offenses that were part of the same course of conduct . . . ." [Drug Case dkt. 94 at 6.]

The morning of her plea and sentencing hearing, Ms. Montes-Flores met with the Government to make her safety-valve proffer. [Habeas dkt. 13-1 at 1 ¶ 4.] Ms. Montes-Flores was not provided with any type of immunity because she had already signed a plea agreement and a stipulated factual basis admitting that she possessed with the intent to distribute more than 5 kilograms of cocaine. [*Id.* at 2 ¶ 5.] However,

> [d]uring the proffer, Flores seemed distraught and eventually began to cry. Flores told [the Government] that she did not know about the cocaine until the police were initiating a traffic stop on the vehicle in which she was a passenger. According to Flores, once the police began to pull the car over, fellow passenger Pastor Limon told her to tell the police that the drugs in the car were hers. During the proffer, Flores claimed that the cocaine actually belonged to Pastor Limon and that she lied when she told the police that Pastor Limon had nothing to do with the cocaine trafficking crime.

[*Id.*]

### D. Effect of Safety-Valve Proffer

After the proffer, AUSA Onderak met with DEA Special Agent Kevin Steele and they "both agreed that it is impossible to know when Flores is being truthful and when she is lying."

[*Id.* at ¶ 6.] In light of Ms. Montes-Flores' recantation, the change of plea and sentencing hearing was vacated and the Drug Case was set for trial. [*Id.* at ¶ 7.]

Because she no longer qualified for the safety-valve, Ms. Montes-Flores was facing a mandatory minimum 120-month prison sentence if convicted of drug trafficking at trial. [*Id.* at ¶ 8.] AUSA Onderak and Special Agent Steele agreed that Ms. Montes-Flores seemed less culpable in the drug trafficking offense than the driver of the car, Mr. Lopez-Montano, and that it seemed unfair that Ms. Montes-Flores could receive a longer sentence than Mr. Lopez-Montano, who still qualified for the safety-valve. [*Id.* at ¶ 6.] AUSA Onderak had multiple conversations with Ms. Montes-Flores' attorney, Bradford Kessler, about resolving the case short of trial. [*Id.* at ¶ 8.] Specifically, AUSA Onderak

> brought up the fact that while Flores had not admitted in the "safety valve" proffer that she possessed with intent to distribute the cocaine, she did admit to committing a crime. Specifically, it was discussed that assuming arguendo Flores['] "safety valve" statement was true, she admitted to making a materially false statement to the police that enabled Pastor Limon to be released by law enforcement the day the 21 kilograms of cocaine was seized. Therefore, we discussed the possibility of Flores pleading guilty to making a materially false statement to law enforcement in violation of 18 U.S.C. § 1001, which carried with it a potential sentence of 0-5 years imprisonment and no statutory mandatory minimum term of imprisonment.

[*Id.* at 2-3 ¶ 8.]

As a result of these discussions, Ms. Montes-Flores agreed to plead guilty to making a materially false statement to law enforcement charges as long as the Government agreed to drop the drug trafficking charge. [*Id.* at 3 ¶ 8.] AUSA Onderak received approval from the drug unit chief to drop the drug trafficking charge if Ms. Montes-Flores pled guilty to the false statement charge. [*Id.* at ¶ 9.]

### E. Guilty Plea in False Statement Case

On November 18, 2011, Mr. Montes-Flores was charged by Information with making a materially false statement to law enforcement in violation of 18 U.S.C. § 1001. [False Statement Case dkt. 1 at 1.] The Information charged that she "falsely stated to law enforcement officers who had confiscated approximately 21 kilograms of cocaine in Putnam County, Indiana from the vehicle occupied by SANDRA MONTES-FLORES, Raul Lopez-Montano, and Pastor Limon that she and not Pastor Limon was responsible for transporting the cocaine to New York City . . . ." [*Id.*] Ms. Montes-Flores waived her right to be indicted by a grand jury. [False Statement Case dkt. 20.]

Ms. Montes-Flores signed a plea agreement and agreed to waive her appellate rights in the False Statement Case. [False Statement Case dkts. 4; 5.] A plea and sentencing hearing was held in February 2012, and the following colloquy occurred regarding the factual basis underlying the charge:

> THE COURT: All right. So can you explain for me today what happened factually? What is the evidence that supports this charge? I know that you got pulled over. So, tell me what happened? What did you tell law enforcement?
>
> THE DEFENDANT: I told them that the drugs in the car were mine.
>
> THE COURT: Was that true?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. And you understood they were investigating a criminal proceeding?
>
> THE DEFENDANT: At the time I didn't know what was going on. I just said the drugs were mine.
>
> THE COURT: But they weren't?
>
> MR. KESSLER: I am sorry, Judge. What did you tell them about Mr. Limon?

> THE DEFENDANT: Mr. Limon told me to take the blame for him, and he would help me get out of jail.
>
> MR. KESSLER: And when you were asked whether or not Mr. Limon had anything to do with it, what did you tell him?
>
> THE DEFENDANT: I said no.
>
> MR. KESSLER: Did you understand that that was a material statement and that it was false?
>
> THE DEFENDANT: No.
>
> MR. KESSLER: Did you think it was true when you told him that?
>
> THE DEFENDANT: I knew it was lie, but I had to say it.
>
> THE COURT: But you had to say it? Were you afraid?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Were you afraid for your life?
>
> THE DEFENDANT: At the time I was afraid of whatever would happen if I didn't take the blame.

[False Statement Case dkt. 32 at 19-20.]

The Court accepted the factual basis stated at the hearing and as contained in the presentence report, which Ms. Montes-Flores confirmed was true. [*Id.* at 21; *see* False Statement Case dkt. 15 at 4 ¶ 14 ("During her statement to law enforcement, the defendant was asked about Pastor Limon, a citizen of Mexico. The defendant told law enforcement that Limon had nothing to do with the drugs found in the vehicle. Partially as a result of this statement, law enforcement did not arrest Limon. Subsequent law enforcement investigation revealed that Limon was involved in trafficking the cocaine, and the defendant had lied to DEA investigators when questioned.").] Ms. Montes-Flores was sentenced to eighteen months imprisonment, to be followed by one year of supervised release. [False Statement Case dkt. 32 at 28.] The sentence was essentially for time served.

After her plea was accepted, the Government dismissed the drug trafficking charge. [Drug Case dkts. 117; 118; Habeas dkt. 13-1 at 3 ¶ 9.] AUSA Onderak attests that the reason the Government agreed to dismiss the drug trafficking charge and agreed to Ms. Montes-Flores pleading guilty to the false statement charge "was in the interest of justice in order to enable the court to have broad discretion in sentencing Flores." [Habeas dkt. 13-1 at 3 ¶ 11.]

### F. Post-Conviction Proceedings

In August 2012, Ms. Montes-Flores filed post-conviction proceedings under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed in the False Statement Case. [Habeas dkt. 1.] Ms. Montes-Flores attested that after sentencing, she was transferred to immigration custody, at which time she learned that she would be deported as a result of her false statement conviction. [Habeas dkt. 2-1 at 11 ¶ 32.] Her post-conviction proceedings were based on her contention that Mr. Kessler, her trial counsel, did not adequately inform her of the deportation consequences of her plea in the False Statement Case. [Habeas dkt. 15 at 4.] Ms. Montes-Flores contended that if she had been informed that she would be deported after pleading guilty to the false statement charge, she would have rejected the plea and declared her intent to be tried on the drug trafficking charge. [*Id.*]

In February 2013, the Court granted Ms. Montes-Flores' motion and set aside her conviction and sentence in the False Statement Case. [*Id.* at 8.] Specifically, the Court found that Ms. Montes-Flores' trial counsel had been prejudicially ineffective by failing to inform her that a conviction for making a materially false statement to law enforcement would result in presump-

tively mandatory deportation.[2] [*Id.* at 7 (relying in part on *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010)).] Therefore, the Court vacated Ms. Montes-Flores' conviction in the False Statement Case and vacated the dismissal of the Drug Case. [Habeas dkt. 16 at 1.]

At a status conference on March 1, 2013, the Government indicated that it would not appeal the Court's order granting post-conviction relief but that it intended to proceed to trial in both the Drug Case and the False Statement Case. [Drug Case dkt. 141.] Ms. Montes-Flores subsequently filed a Motion to Dismiss the Indictment in the Drug Case and a Motion to Exclude the Statement Made at the Safety-Valve Proffer in the False Statement Case.[3] [Drug Case dkt. 142; False Statement Case dkt. 51.]

## II.
### DISCUSSION

Ms. Montes-Flores moves to suppress the statement she made to the Government at the safety-valve proffer in the Drug Case for two reasons. First, she contends that the Government should not be able to introduce it against her in the False Statement Case because that statement is protected by the evidentiary prohibition on statements made during plea discussions. [False Statement Case dkt. 52 at 4-9.] Alternatively, Ms. Montes-Flores argues that the statement should be excluded because it was allegedly the result of ineffective assistance of counsel. [*Id.* at 9-12.]

---

[2] Seventh Circuit precedent establishes that the crime of making a material false statement is considered a crime of moral turpitude and is therefore a removable offense. *Ghani v. Holder*, 557 F.3d 836, 841 (7th Cir. 2009); *see also Benaouicha v. Holder*, 600 F.3d 795, 797 (7th Cir. 2010) (alien who committed § 1001 crime of moral turpitude was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)).

[3] The Court addressed Ms. Montes-Flores' pending motion in the False Statement Case by separate entry, also issued today.

### A. Protection for Safety-Valve Proffer

The parties dispute whether Ms. Montes-Flores' safety-valve proffer was a protected statement, such that it is inadmissible to prosecute her in the False Statement Case. Ms. Montes-Flores argues that she did not waive the evidentiary protections of Federal Rule of Evidence 410 or Federal Rule of Criminal Procedure 11 and also emphasizes that the plea agreement she signed before the statement was later withdrawn. [False Statement dkt. 52 at 5-8.] She further argues that she had a subjective expectation that she was still negotiating for application of the safety valve at the time of the discussion and that her expectation was reasonable. [*Id.* at 8-9.]

The Government argues that Ms. Montes-Flores' safety-valve proffer was not a protected statement because she had already signed a plea agreement at the time of the proffer. [False Statement Case dkt. 55 at 7-8.] The Government emphasizes that she was not given use immunity and that the plea she signed acknowledged that it was binding on the parties, thus, the statement was not protected. [*Id.*]

The safety-valve provision "was enacted by Congress in order to benefit defendants who wished to cooperate with the government but, because they were less culpable, or because their more culpable colleagues had already cut deals with the authorities, they did not have new or useful information to provide." *Emezuo v. United States*, 357 F.3d 703, 708 (7th Cir. 2004). In order to qualify for the safety-valve, a defendant must meet the five criteria set forth in U.S.S.G. § 5C1.2(a) Only one is relevant here:

> [n]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(5). If the requisite showing is made, the Court may sentence a qualifying defendant below the statutory minimum, 18 U.S.C. § 3553(f), and the defendant bears the burden of proving that she is eligible, *United States v. Ponce*, 358 F.3d 466, 468 (7th Cir. 2004).

Federal Rule of Criminal Procedure 11(f) provides that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Federal Rule of Evidence 410 provides, in relevant part, that certain statements made during plea discussions are inadmissible, including "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea."[4] A defendant may, however, waive the right to prevent the use of statements made during plea negotiations. *United States v. Krilich*, 159 F.3d 1020, 1024 (7th Cir. 1998) (citing *United States v. Mezzanatto*, 513 U.S. 196, 207 (1995)). Whether a defendant's statements were made in the course of plea discussions turns on her subjective expectation of negotiating a plea at the time of the discussion and the reasonableness of that expectation given the totality of the circumstances. *See United States v. O'Brien*, 618 F.2d 1234, 1240-41 (7th Cir. 1980).

Ms. Montes-Flores signed the plea agreement in the Drug Case on June 9, 2011, and met with the Government to make the safety-valve proffer on September 28, 2011. [Drug Case dkts. 71; 72; Habeas dkt. 13-1 at 1 ¶ 4.] The parties' main dispute regarding the admissibility of the statement is whether a statement made after a plea agreement has been signed can still be part of plea negotiations and, thus, presumptively inadmissible. Neither party cites, and the Court did

---

[4] Rule 410(b)(2) lists an exception to the general admissibility of such statements for "a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present." The Government does not argue that this exception applies, presumably because Ms. Montes-Flores was not under oath during the safety-valve proffer or the statement was not recorded, so the Court will not address that exception further.

not find, authority from the Seventh Circuit Court of Appeals directly on point.[5] Courts that have addressed this issue, however, have held that statements offered after a plea agreement has been reached "cannot be considered statements made in the course of plea discussions within the meaning of the exclusionary rules." *United States v. Hare*, 49 F.3d 447, 450 (8th Cir. 1995); *see also United States v. Marks*, 209 F.3d 577, 582 (6th Cir. 2000) (holding that "statements made after a plea agreement is finalized are not made in the course of plea discussions"); *United States v. Watkins*, 85 F.3d 498, 500 (10th Cir. 1996) (holding that "both the language of, and the policy underlying, [the exclusionary rule] verify that once a plea agreement is reached, statements made thereafter are not entitled to the exclusionary protection . . . ."); *United States v. Davis*, 617 F.2d 677, 685 (D.C. Cir. 1979) ("Excluding testimony made after and pursuant to the agreement would not serve the purpose of encouraging compromise."); *Meece v. Commonwealth of Ky.*, 348 S.W.3d 627, 650 (Ky. 2011) (recognizing that "[t]he [federal] case law is clear" on this point) (collecting cases). In fact, Congress amended Criminal Rule 11 in 1979 because it thought it encompassed "a too-broad view of the plea negotiation process." *Marks*, 209 F.3d at 582 (recognizing that "[p]rior to its amendment, the rule provided for the exclusion of 'statements made in connection with, and relevant to, any of the foregoing pleas or offers.' ... The legislative history of the 1979 amendments manifests congressional disapproval of broad judicial constructions of the previous language, and the revision of the rule appears to have been designed specifically to avoid [that] result.") (citations omitted).

---

[5] The Government cites *Tyra v. United States*, 270 Fed. Appx. 410 (7th Cir. 2008), in support of its argument. [False Statement Case dkt. 55 at 8.] It is unclear what the Government relies on from *Tyra* since it does not quote from the case or provide a pinpoint citation. The Court concludes that *Tyra* is inapplicable because it involved the existence of and/or the continuing effect of an immunity provision in a defendant's cooperation agreement with the Government. While it did uphold the consideration of statements made during a safety-valve proffer, it contains no discussion of Evidence Rule 410 or Fed. Crim. Pro. R. 11 and is not directly helpful.

In light of the prevailing view and Congress' decision to narrow the scope of Criminal Rule 11, the Court finds Ms. Montes-Flores' argument that her post-plea agreement statement is protected to be unconvincing. Moreover, given the totality of the circumstances, Ms. Montes-Flores should not have reasonably believed that she was still negotiating a plea deal with the Government at the time of the safety-valve proffer. Ms. Montes-Flores had already signed a binding plea agreement, the plea agreement recognized that the sentencing guidelines determination would be made by the Court, and Ms. Montes-Flores bore the burden of proving that the safety-valve should apply. [Drug case dkt. 72 at 2 ¶ 3.] Accordingly, the Court denies her motion.

### B. Ineffective Assistance of Counsel

Alternatively, Ms. Montes-Flores argues that the statement she made at the safety-valve proffer should be excluded because she allegedly received ineffective assistance of counsel from her previous trial counsel, Mr. Kessler. Specifically, Ms. Montes-Flores contends that her counsel was ineffective for two reasons: 1) he failed to meet with her the morning of the safety-valve proffer to confirm what she was going to tell the Government and "prepare her for the consequences of those statements", and 2) by not securing use immunity for her statements at the safety-valve proffer. [False Statement Case dkt. 52 at 12.]

The Government defends Ms. Montes-Flores' counsel's performance, pointing to the comparatively favorable sentence she received after confessing to law enforcement at the safety-valve proffer that she lied about Mr. Limon's lack of involvement and subsequently pleading guilty to making a false statement. [False Statement Case dkt. 55 at 11-12.] It further emphasizes that there was no need for counsel to secure use immunity because safety-valve statements can

only concern the offense of conviction and all relevant conduct and Ms. Montes-Flores had already pled guilty to the drug crime. [*Id.* at 11.]

The Sixth Amendment to the United States Constitution provides criminal defendants the right to counsel at every critical stage of the proceedings. *United States v. Febus*, 218 F.3d 784, 793 (7th Cir. 2000). That right extends to sentencing, *id.*, and inherent in the right is that the defendant is entitled to the effective assistance of counsel, *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). To prevail on an ineffective assistance claim, a petitioner must prove both that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) ("To prevail on an ineffective assistance claim, a petitioner must prove both (1) that his counsel's performance was objectively unreasonable and (2) that he suffered prejudice as a result.").

The Court concludes that Ms. Montes-Flores has failed to show that it was objectively unreasonable for Mr. Kessler to allow her to make a statement at the safety-valve proffer without first confirming what she would say. While Ms. Montes-Flores correctly points out that Mr. Kessler attested in her habeas proceedings that he "personally questioned the truthfulness of the statement that [she] had made to the agents about her involvement in the narcotics transaction," [habeas dkt. 2-3 at 4 ¶ 8], she does not argue that Mr. Kessler had any reason to believe she would change her previous position. In fact, Mr. Kessler attested in the habeas proceedings that after Ms. Montes-Flores agreed to plead guilty, he "met with [her] to discuss the pre-sentence investigation report ("PSR") and next steps, including the safety valve proffer" and that he "left that meeting with the understanding that, at the safety valve proffer, Ms. Montes-Flores would state essentially what she told the agents on September 7, 2010 [the date she was arrested in the

Drug Case]." [*Id.* at 5 ¶ 11.] Given that Mr. Kessler met with Ms. Montes-Flores after the plea was signed to discuss the safety-valve proffer and had no reason to believe she was going to make a statement inconsistent with what she had previously told law enforcement officials, it was not objectively unreasonable for him not to meet with Ms. Montes-Flores again until the morning of the safety-valve proffer or confirm that she did not intend to alter her statement. In sum, counsel had no reason to believe Ms. Montes-Flores was going to change her story, and his failure to anticipate what ultimately transpired at the safety-valve proffer was not deficient.

Ms. Montes-Flores' argument that Mr. Kessler was deficient for not securing use immunity fails for similar reasons. First, because there was no reason for Mr. Kessler to anticipate that Ms. Montes-Flores was going to make an inconsistent statement, it was not objectively unreasonable for him not to seek use immunity. Second, as the Government points out, safety-valve statements only concern the offense of conviction and all relevant conduct, 18 U.S.C. § 3553(f)(5); thus, it was not objectively unreasonable for counsel not to secure use immunity because Ms. Montes-Flores had already pled guilty to the drug crime. For these reasons, the Court concludes that counsel was not deficient for failing to secure use immunity for the safety-valve proffer.

The Court will address Ms. Montes-Flores' alleged prejudice even though her ineffective assistance of counsel claim fails because she has not established her counsel's deficiency. Ms. Montes-Flores contends that she was prejudiced because the safety-valve proffer ultimately resulted in the False Statement Case. [False Statement Case dkt. 52 at 12.] But Ms. Montes-Flores ignores that the Government filed the False Statement Case as part of a subsequent plea agreement Ms. Montes-Flores reached so that she could receive a lesser sentence than she would have received under the plea agreement in the Drug Case. [Habeas dkt. 13-1 at 2-3.] Ultimately, Ms.

Montes-Flores was sentenced to eighteen-months imprisonment in the False Statement Case, which was essentially a time-served sentence. [False Statement Case dkt. 32 at 28.] Comparatively, the sentencing guideline range for Ms. Montes-Flores in the Drug Case was 120-135 months. [Drug Case dkt. 83 at 1.] Thus, had she not made a safety-valve proffer in the Drug Case (so as not to open herself up to the false statement charge), she would have faced a sentence more than six times greater than what she later received in the False Statement Case. Even if Ms. Montes-Flores' counsel could have convinced the Government to take a consistent written statement as the safety-valve proffer, application of the safety-valve is ultimately still at the discretion of the trial court. By way of comparison, Ms. Montes-Flores' co-defendant, Mr. Lopez-Montano, qualified for the safety-valve in the Drug Case and was sentenced to 87 months, [drug case dkt. 113], which is still more than four times the sentence Ms. Montes-Flores received in the False Statement Case.

Additionally, the charges in both the Drug Case and the False Statement Case are presumptively deportable offenses, so even if Ms. Montes-Flores had not recanted her prior admission at the safety-valve proffer and had proceeded with the guilty plea in the Drug Case, she still would have been convicted of a deportable offense. [*See* Habeas dkt. 15 (detailing why material false statement conviction was deportable offense)]; *see also* 8 U.S.C. §§ 1227(a)(2)(B)(i) (listing controlled substances conviction as deportable offense, with limited exception not at issue here).

For these reasons, the Court finds that Ms. Montes-Flores has not shown prejudice. Accordingly, and because the Court has concluded that counsel's performance was not objectively unreasonable with regards to the safety-valve proffer, Ms. Montes-Flores' ineffective assistance of counsel claim fails.

# III.
## CONCLUSION

The Court notes the unique posture of Ms. Montes-Flores' motion. Motions to suppress typically succeed when a government actor has acted improperly—*e.g.*, a warrantless search without an exception or the failure to properly give *Miranda* warnings. But Ms. Montes-Flores isn't the victim of any alleged unlawful conduct here. Instead, the allegations are that she lied by disclaiming another suspect's involvement at the scene of a drug bust, that that suspect was released based on her lie, and that she later changed her story during a voluntary statement to the Government. If theses facts are proved, the consequences of Ms. Montes-Flores' inconsistencies will be of her own making, not because of any fault of the Government or her former trial counsel.

For the reasons detailed herein, the Court **DENIES** Ms. Montes-Flores' Motion to Exclude. [Dkt. 51.] The Court will promptly set this matter for trial by separate entry.

05/02/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Robert W. Kent
BAKER & MCKENZIE LLP
robert.kent@bakermckenzie.com

Matthias David Onderak
UNITED STATES ATTORNEY'S OFFICE - EV
Matthias.Onderak@usdoj.gov

Kathleen Sanderson
BAKER MCKENZIE LLP
kathleen.sanderson@bakermckenzie.com